and Mr. Mayer. Am I pronouncing your name right? Maher. Maher. And I'm Bettis. I understand. You've reserved two minutes, is that correct? That is correct. Okay. Colleagues are ready. We will ask you to begin. Thank you. Again, good morning. My name is Sean Maher. I represent defendant appellant Kevin Walker. I intend to focus my argument today on the government cell site expert and then touch upon the search warrant and search of Walker's apartment issues, time permitting. In today's world awash with technology, the integrity of electronic data used to obtain a conviction is of paramount importance. Here, the trial court erred in permitting the government's paraprofessional, Mr. Ronald Donaldson, to provide expert testimony about cell tower location data when the underlying location data used to form Donaldson's opinion came not directly from the providers such as Sprint and Verizon, but instead from files downloaded onto an FBI website. So what do we do about the fact that the records were provided to you long before trial and you didn't request the keys at that time? I mean, couldn't you have raised a challenge to the expert testimony at that point and then we could have resolved this issue prior to trial? Well, first off, we had been requesting all of the information from the government, the call detail records, the certification, the keys, all of it. And as the record is clear, in the first days of trial, beginning with the pretrial conference on December 1, then on December 4, the 5th, the 6th, the 8th, and all the way to the middle of the testimony of the expert, defense made repeated attempts to get the records and to show, to get the certification to show that all of the call detail records and keys were all provided contemporaneously. We did that. I would add also that there's no burden on the defense to help the government prepare its proof at trial. No, I don't think that that is what I was suggesting in my question, but I mean, you did get to cross-examine on the methodology, right, and the reliability, and didn't the district court take several steps to ensure that you were able to cross-examine? The steps that the defense were permitted to take at that late moment did not remedy the constitutional defect that had occurred. The defense learned about the practice that this expert used these cell location keys in the middle of his testimony. In the middle of his testimony is when it came out on the defense voir dire of the expert. That expert, Donaldson, who is a, you know, works for the U.S. Attorney's Office, stated that he didn't even remember where he received the keys that he used as the basis of his testimony and that he then embedded in his PowerPoint, which was Government's Exhibit 700. That PowerPoint was crucial, crucial in establishing Walker's proximity and potential involvement in the crime. But you're not saying the evidence was manipulated or altered, is that right? I mean, that's not the allegation. Our position at trial, and still to this day, is we really don't know. What we do know is that, take the Verizon data, for example. The government provided two sets of data for Verizon records that ostensibly came from the exact same records on the same exact day. The cell tower location keys had at least 400 rows of data that were different. They should have been exactly the same. The data that is provided, these aren't hard copies of paper. These are Excel spreadsheets that one can easily go into and are thousands, and I think one was even perhaps over 10,000 rows long. So at trial, Donaldson was not able to say that he went row by row to discern what differences there were in these records. He just said, I think it's good enough. May I be sure I understand exactly what the dispute is here? We're really talking about the Sprint and the Verizon records, right, not the AT&T? At this stage, correct. And with respect to the Sprint and Verizon records, we are reviewing the district court's actions for abuse of discretion. Is that also correct? I disagree. I think on our 702 and 703 claims, yes. But as far as our Sixth Amendment Confrontation Clause violation claim, I do believe it's de novo. Well, you were allowed to cross-examine the witness. Well, our position is our cross-examination at that point was wholly ineffective. Well, how is it a Sixth Amendment claim? I just want to be sure I understand how it is a Sixth Amendment claim. Because this was an expert, not a lay witness, an expert whose testimony was predicated upon the integrity of the data from these cell tower lists. Well, what case says that this is a Sixth Amendment problem for such an expert to testify when he is made available for cross-examination? I just want to be sure I understand the argument. I have not found a case in this exact arena that touches on this. This is a relatively new technological area. But the idea is that the witness testified, and his testimony was utterly meaningless unless his testimony was based upon the factual details in these records. All right. Well, now let me get to my final point. This was not the only witness who testified about these records. The court made sure that witnesses from the provider entities were also available for cross-examination. Is that right? They were available for cross-examination, but it's important to note— And they provided testimony that could be viewed as reinforcing the experts' assumptions, conclusions, whatever you want to call them, about the infrequency, indeed the rarity, with which towers were deactivated, the fact that they were never reassigned, that if a call goes through, the tower is functioning. So in those circumstances where that kind of evidence was put before the jury, what is the error in allowing this expert to testify when you had the opportunity to cross-examine? First off, those witnesses, the one who was from Sprint and Verizon, were testifying only in their capacity as records custodians. They were not experts. No, but they did testify about the fact that their respective companies rarely to never deactivated towers and that they didn't reassign tower numbers, which were the two critical facts that you were suggesting were problematic about the CSLI, right? Ricardo Leal, the records custodian for Sprint, testified that as a records custodian, he does not review the records for accuracy of the data. That is for engineering. That's a Trial Transcript 1652. Ms. Tomalin, the custodian of records for Verizon on Trial Transcript 1686 and on Trial Transcript 1700, testified to this question and to this answer. Within your division, is there any way to know the universe of cell site lists look like on the exact date and time? Answer, no. You are not reviewing these lists and ascertaining whether they are accurate. You're just reviewing them and ascertaining that they are the list you've got. Yes, that's correct. So there is a tremendous difference between a custodian saying, yes, these are the lists when I punch a button that pop up, versus saying that the integrity of the data is there. And that's what the defense was utterly prevented from doing by receiving this information at the last instance. Thank you. Mr. Rebold. Good morning, Your Honors. My name is Jonathan Rebold. I represent the government in this appeal, and I also represented the United States at trial before the district court. Given that Mr. Maher's arguments today are really focused on the cell site evidence, I want to address that first, if not exclusively. And before I proffer why I believe that this evidence and testimony was properly admitted, I think it's important to just take a brief step back and understand what this evidence was in the context of the trial. And there are two, I think, incredibly important points that fall under this umbrella. First, as Judge Radji correctly pointed out, what Mr. Maher is putting at issue are records from Verizon and Sprint, because those are phone records for which a cell site key was required to understand the placement of particular cell site towers. But AT&T, I think, is where you're going, didn't have that kind of problem. That's correct, Your Honor. AT&T includes in its cell site records the exact latitude and longitude of each cell tower that's utilized by that particular phone number. And why that's incredibly important is because Kevin Walker had two cell phones, one belonging to AT&T and one belonging to Sprint. The AT&T phone alone placed Kevin Walker in the vicinities of both the second and third gas station robberies. Neither of the phones, neither the AT&T. But also the two failed attempts to rob the check cashing business, right? Yes, so they also did place him at the failed attempts to rob the check cashing stores on both dates. The records for which Mr. Maher is concerned, the Sprint and Verizon records, relate primarily to the phones used by the government's cooperators in this case, Rodney Shirley and Kyle Clay. Nobody is disputing that they were at the scenes of all of the robberies. In fact, that's the thrust of the defense is that they committed the robberies and were throwing Mr. Walker under the bus instead of the real third perpetrator. Second, the one phone that Mr. Walker had that was not an AT&T phone, meaning the Sprint phone, at least as it relates to the gas station robberies, only placed him in the vicinity of the second gas station robbery, meaning that it's cumulative to the evidence that no one is challenging from the AT&T records. So that's, I think, an important point. Well, and then you also had the cooperating witnesses and the other witnesses. Yes, and that sort of turns to, I think, the second important point to understand the context of what we're really disputing here. These cell site records were effectively a drop in a bucket of overwhelming and abundant evidence against Mr. Walker. That included extensive testimony from two cooperators. It included highly incriminating text messages sent between Mr. Walker and Rodney Shirley recovered from Mr. Shirley's phones, not Mr. Walker's. They include cell phone toll records between Mr. Walker and Mr. Shirley and Mr. Walker and Mr. Clay on the dates of the robberies in question. They include surveillance video that showed Kevin Walker's car in the vicinity of the robberies, including his license plate, which was depicted. So is this all by way of a harmless error argument? To the extent the Court believes there was error, which I submit there clearly was not error here, even if there was error. But that's what this point you're making is relevant to? Yes, Your Honor. There is overwhelming evidence of the defendant's guilt. It also included LPR records and license plate records showing Walker's car traveling to and from the Bronx immediately before and after the robberies. There was video from the first robbery that showed Kyle Clay and Rodney Shirley getting to passenger seats of Walker's car immediately after the first robbery. There were searches of Walker's home in which a unique backpack that Kyle Clay wore during the first robbery was found inside of Mr. Walker's home. His cell phones were found on his person on the date of his arrest, which had police scanner apps, which were relevant to the testimony of the cooperators. Him searching a New York One News report of the first robbery. Lists of check cashing stores, which was relevant because the testimony established that Walker frequently cased and attempted to rob check cashing stores. Video of Mr. Walker taping himself casing a Bronx truck. There was also Mr. Walker's car, which was covered in this case, which included registration and insurance documents that showed Mr. Walker's name connecting him to the car, as well as an identifiable iPhone 4 charger, which connected to an iPhone 4 that was recovered on his person. So there was overwhelming and abundant evidence of Mr. Walker's guilt, even if you don't consider the records. And again, even if you do consider the cell site records, the one that Mr. Maher is really challenging is just cumulative to cell site records from AT&T, which he's not challenging. All of that said, this evidence was properly admitted. Judge Abrams exercised her gatekeeper responsibilities to make sure that there was a proper foundation for Mr. Donaldson's testimony, and before she allowed Government Exhibit 700 and the testimony about it to remain in evidence, she first had the government collect and provide for Defense Counsel cell site keys provided directly by the providers for the relevant times that these records depicted. Mr. Donaldson then personally redid his, effectively redid his maps. He re-plotted all of the cell sites using the updated keys and confirmed that the very points that he plotted on his map using the ENDACAC results were identical to a cell site to the ones that were plotted in his original maps. Anything after that, I would submit, Your Honor, really goes to weight rather than admissibility. And Defense Counsel had ample opportunity to argue about the weight of the evidence throughout his summation, also throughout his cross-examination, and the jury clearly rejected those arguments. Just in quick response to one other point that Mr. Maher made earlier today, the defense witnesses, Ricardo Leal and Ms. Tomalin from Sprint and Verizon respectively, each said that the cell site networks were largely in place in 2015 prior to these crimes and the records that are depicted on the maps. And second, that it's incredibly rare for a cell site company to decommission cell sites, and that's because of how expensive it is to put them up in the first place. I believe it's transcript 1661 to 62 where Ricardo Leal said it is much more rare to decommission a cell site than to add one. And Ms. Tomalin, in trial transcript 1691 to 92, said that in her eight and a half years working for Verizon, she has never seen a cell site that was decommissioned. In terms of Mr. Walker's right to confrontation, the government, this is not a confrontation clause argument. The government respectfully submits that this is effectively an abuse of discretion argument that's being cloaked as a confrontation clause argument to basically create a basis for the defendant to have greater protections. But in fact, the defendant had ample opportunity to cross-examine the government's witness. Judge Abrams twice adjourned Mr. Donaldson's testimony to allow defense counsel to prepare the cross-examination regarding his cell site testimony and the maps he prepared. They indeed confronted him over multiple days. The government was also required to provide to defense counsel witnesses from ENDACAC and the FBI, witnesses from Sprint and Verizon, and Mr. Walker called all of those witnesses in his case. And in the end, what those witnesses did is simply reaffirm what Mr. Donaldson testified about in the government's case. And finally, I would just note that it has now been over six years since this case was tried. Defense counsel has had all of these cell site keys. Nowhere in the defense papers before this court or in any filings after trial has defense pointed to a single point in any of Reggie Donaldson's maps that was in fact inaccurate, and that's because Donaldson's work was reliable and accurate. Unless your honors have any other questions for me, I'll sit down. Thank you. Mr. Walker, you have two minutes. Thank you. I'd like to respond first to the government's argument that the defense is somehow trying to cloak our arguments in constitutional language in order to give Mr. Walker greater protections. Well, Izzy, I mean, that might have been an artful. I think one way of interpreting that was should this have been a Rule 16 disclosure problem here and is it now kind of getting morphed into a constitutional issue? Would you respond to that? Absolutely. The government had the burden and should have disclosed this. The defense asked repeatedly for this discovery. The government had every opportunity to say, you know what? These keys used by our expert were not coming from the providers. Instead, he was getting them from this portal. That would have explained and made sense to the defense why all the certifications we were getting were all not matching the information that we were getting and that the keys didn't line up. But the government made the decision to not reveal that over and over and over again. That then placed the defense in an impossible position in the middle of the trial in order to actually rebut that with meaningful cross-examination. At the close of the government's case, the defense made a specific mistrial request and an alternative request for relief of adjourning the trial until the following month to give the defense the opportunity to procure engineering IT professionals who could actually look at the hardware system and understand what the FBI is doing when they are getting literally e-mails from these providers and they are manually transferring these e-mails between various servers in the FBI and the CAC and then they end up in the arms of law enforcement agencies without ever revealing it to the defense. And this is potentially happening all over the country. Donaldson testified that law enforcement professionals like him are going to this website and is not disclosed to the defense. The defense thinks when they receive a packet that says here is the certificate of authentication, here are the call detail records, here are the keys, the defense thinks it actually came directly from the providers to the U.S. attorneys to the defense. And that's not what's happening. We have no idea what is going on with the FBI servers, how it's being manipulated. Not that I'm suggesting it is, but the defense has the right to know. That's the whole point of the certificate of authentication, the certification. And that was utterly circumvented in this case. And that was the government's choice. And there is nothing that we could do with the time that we have. Do you want to say a word about this harmless error argument? Absolutely. Thank you. If the court goes into a harmless error analysis, this case should still be reversed. First off, the evidence against Walker was fundamentally predicated on the word of the two cooperators, both who admitted that they had lied repeatedly. Repeatedly, that's in the footnote of our brief. I mean, over and over they admitted that they lied. The forensic evidence that was used to bolster those witnesses, none of it really tied Walker to the crimes. They had the automated license plate readers, but that was only to the car, the red Mercedes. It came out at trial that Mr. Walker has two brothers who also were engaged, unfortunately, in criminal activity. And it could have been them who had access. There was no video footage of the actual driver of the car at any of these robberies. So it was unclear who was actually driving the car. None of the actual items from the robberies were found on Mr. Walker in his apartment. So the clearest forensic data that linked Walker to these crimes was this cell tower location data. You haven't mentioned the knapsack. The knapsack was a generic black knapsack. I think it had three letters on it. So not so generic, given the three letters. Well, there was testimony. I won't even call a number, but the testimony was that there were thousands of these backpacks in this tri-metro area. So it wasn't that dispositive that that meant that Walker was involved in the crimes, particularly when there was a subtext that his brother or brothers could have been involved. So this cell location data was key because those were phones associated with Mr. Walker that agents say that they took directly from Walker. The AT&T aspect is also not dispositive for the government because if you take out the maps with all of the Sprint and Verizon information that Donaldson used in his presentation, the AT&T was meaningless. It became meaningful in his government exhibit 700 because it was shown with all of the other phones. That's what showed proximity of Walker to these crimes. And the government has failed to meet its burden here. Thank you. Thank you both. We'll take the case under advisement.